[No. 37898.   Department Two.   January 5, 1967.]

NANCY J. PROVINS, *Respondent,* v. CHARLENE BEVIS *et al., Appellants.*\*

\*Reported in 422 P.2d 505.

132

*Merrick, Douglas & Burgess* (*F. Ross Burgess*, of counsel), for appellant Bevis.

*John G. McCutcheon* and *Donald F. Herron*, for appellant Pierce County.

*Vernon R. Pearson* (of *Davies, Pearson, Anderson & Pearson*), for respondent.

HAMILTON, J.—Plaintiff, Nancy J. Provins, was injured during the early morning hours of April 6, 1963, when the automobile in which she was riding as a passenger struck a stump at the end of Devil's Head road on the Longbranch Peninsula in Pierce County, Washington. She initiated this action seeking redress from her host driver, Charlene Bevis, and from the proprietor of the road, Pierce County. A jury found liability on the part of both defendants and awarded damages. Miss Bevis and Pierce County appeal.

The background pertinent to this appeal may be summarized in the following manner: On the evening of April 5, 1963, the Misses Provins and Bevis, being close friends, met for a social evening. They proceeded, in Miss Bevis's automobile, first to the New Yorker, a cafe and cocktail lounge in Tacoma, where they each had two bottles of beer, and then to the Bevis home in the Gig Harbor area where they changed clothes. From the Bevis home they journeyed to the Key Center Tavern on the Longbranch Peninsula arriving there between 9 and 9:30 p.m. A community benefit, being given for a family whose home had burned,

was in progress at the tavern. Food, beer, and dancing were available. The two young ladies remained at the tavern until midnight eating, dancing, and drinking, they said, only three glasses of beer apiece. Upon departing the tavern they drove to a friend's home, where they stayed for about an hour and consumed some more beer. Their friend testified that at this time they appeared to be under the influence of intoxicants. The girls denied such was the case, both proclaiming that neither was affected by their compotation.

After leaving the residence, with Miss Bevis driving and their ultimate destination the Provins home in Tacoma, they entered upon and proceeded south on the Longbranch road. At the time, it was rainy and foggy, and Miss Bevis feared she was lost.

The Longbranch road is a center-striped, 2-lane, macadamized arterial running generally north and south on the Longbranch Peninsula. South of the community of Longbranch, it merges into and becomes known as Devil's Head road, which in turn dead ends in a graveled turnaround just short of the southern tip of the peninsula. The road is maintained by Pierce County. It is posted with a 35 mile an hour speed limit. At the time of the accident it was marked as a dead-end road with a single black on yellow, wooden, 18 by 24 inch sign located among some fence posts several feet distant from the right side of the roadway, and about 50 feet south of a view-obstructing intersection approximately 1.2 miles from the terminus of the road. The dead-end sign was not reflectorized, and immediately beyond it and considerably closer to the edge of the roadway was a standard 35 mile an hour speed limit sign.

As the road approaches its terminus, the bordering foliage becomes heavier and in some places overhangs the road, producing a tunnel-like effect, and the center stripe bends slightly to the right, creating the impression that the road turns and continues in that direction. Instead of turning right, however, the paved portion of the road ends

abruptly and a graveled lane turns sharply to the left around a centerpiece of trees and foliage thus creating the turnaround.

After traveling south on the Longbranch road for some distance, the girls reached and stopped briefly in the community of Longbranch. The purpose of the stop is in dispute. Miss Bevis testified it was for the purpose of getting her bearings. Other testimony suggests it was for the purpose of effecting a rendezvous with another friend. In any event, at this point Miss Provins, who was recuperating from a recent hospitalization, fell asleep and Miss Bevis continued driving south on Devil's Head road, either believing she was on a road that would lead her to Tacoma or in pursuit of the friend who had driven past them as they were parked in Longbranch. As she proceeded south she passed the intersection with the dead-end sign and noted only the speed-limit sign. As she approached the area of the turnaround, she observed the center line bending to the right, believed she was entering a right turn, slowed down preparatory thereto, and, as the automobile reached the gravel, suddenly realized the road ended. She immediately applied the brakes, skidded sideways in the gravel, and collided with a tree stump just past the graveled area. The left side of the automobile was damaged and Miss Bevis and Miss Provins were injured.

Miss Provins predicated her claim for relief against Miss Bevis upon allegations of gross negligence or intoxication, and against Pierce County upon allegations of failure to provide adequate warning of a deceptive and dangerous highway condition. Both defendants denied liability, and pleaded contributory negligence. Pierce County, in addition, pleaded that the accident was caused by excessive speed and intoxication on the part of Miss Bevis. At the conclusion of plaintiff's evidence, which did not include the testimony of the girls' friend as to their being under the influence of intoxicants, both defendants challenged the sufficiency of the evidence. The respective motions were denied. Miss Bevis elected to stand on her motion and

presented no evidence. Pierce County proceeded with its evidence, including the opinion evidence regarding the girls' state of sobriety. At the conclusion of all of the evidence, both defendants renewed their challenges and at this stage the trial court denied the county's motion and granted Miss Bevis's motion with respect to the allegation of gross negligence, but denied it as to the allegation of intoxication. Plaintiff's allegations, as thus delimited, were submitted to the jury.

Miss Bevis, on appeal, in essence renews her challenge to the sufficiency of plaintiff's evidence to justify submission of the issue of intoxication to the jury under the host-guest statute. She insists (a) the trial court was required to grant her motion at the conclusion of plaintiff's case, because the evidence was then insufficient to sustain a jury finding of either gross negligence or intoxication; (b) because she stood on her challenge, neither the trial court, in passing upon her renewed challenge at the conclusion of all of the evidence, nor the jury, as to plaintiff's claim, could consider the evidence bearing upon intoxication as adduced by her codefendant, Pierce County; (c) the word intoxication, as used in the host-guest statute, denotes a greater degree of inebriation than is implied by the phrase "under the influence of or affected by intoxicants," and the evidence, however considered, was insufficient to support such a finding of intoxication.

■   Addressing ourselves to contentions (a) and (b) above, and bearing in mind that we are here dealing with a situation where two defendants are properly joined in an action, we are satisfied the answer to both contentions inheres in the rule expressed by Lord Denman, Ch. J., in *Sowell v. Champion*, 6 Ad. & El. 407, 112 Eng. Rep. 156, 2 Nev. & P. 627 (1838). Directing his attention to a cause in which two or more defendants were joined, and one or more moved for a dismissal at the conclusion of the plaintiff's case, Lord Denman stated the pertinent principle and rationale as follows:

> "The application to a Judge, in the course of a cause, to direct a verdict for one or more of several defendants in

trespass is strictly to his discretion; and that discretion is to be regulated, not merely by the fact that at the close of the plaintiff's case no evidence appears to affect them, but by the probabilities whether any such will arise before the whole evidence in the cause closes. There is so palpable a failure of justice, when the evidence for the defence discloses a case against a defendant already prematurely acquitted, that such acquittal ought never to take place, but where there is the strongest reason to believe that such a consequence cannot follow." 48 A.L.R.2d 536.

That American courts have, in general, subscribed to the rule and reasoning of Lord Denman in the *Sowell* case is evident from the annotation found in 48 A.L.R.2d 535, wherein it is stated at 536:

While the right to direct a verdict in favor of one or more of several defendants at the close of the plaintiff's case was at one time a disputed question, it now appears settled that the matter rests in the sound discretion of the trial court.

Thus, in the instant case, when, at the conclusion of plaintiff's evidence, it appeared to the trial court from the pleadings and pretrial proceedings that there existed a reasonable probability that Miss Bevis's codefendant, Pierce County, would present evidence bearing upon the issue of her sobriety and/or negligence the trial court could, in the exercise of its discretion, properly deny her challenge to the sufficiency of the evidence at that stage of the case. And, when, at the conclusion of all of the evidence, it appeared that the codefendant had in fact presented admissible and relevant evidence upon the issue of intoxication, that evidence became as applicable to the pertinent allegations of plaintiff as to the allegations of Pierce County, and the trial court was fully warranted in considering such evidence in passing upon Miss Bevis's renewed challenge to the sufficiency of the evidence upon this issue. The circumstance that Miss Bevis voluntarily elected to stand upon her challenge made at the conclusion of plaintiff's case, would not insulate her from any beneficial or detrimental evidence adduced during the course of her codefendant's

presentation, for, as we remarked in *Petersen v. Department of Labor & Indus.*, 40 Wn.2d 635, 245 P.2d 1161 (1952), "All parties benefit or suffer from the testimony of all witnesses." Thus, if the evidence so adduced was substantial, and sufficient to carry the issue of intoxication to the jury, the trial court could not ignore it in passing upon the sufficiency of plaintiff's case nor confine the jury's consideration of such evidence to Pierce County's allegations.

By her third contention (contention (c) above), Miss Bevis asserts that the word "intoxication" as used in the host-guest statute (RCW 46.08.080) denotes a degree of inebriation which substantially and appreciably impairs the driving capacity of the host driver, and that the evidence presented by plaintiff and Pierce County was insufficient to support such a finding.

We disagree.

■ The word "intoxication" as used in the host-guest statute is a broad and relative term. It embraces and includes the varying degrees of insobriety from "under the influence of intoxicants" to "dead drunk." It contemplates a situation where the host driver is affected by the intake of intoxicants to an extent which prevents him or her from exercising the care and caution in driving an automobile which a sober and prudent person would exercise under the same circumstances. *Willoughby v. Driscoll,* 168 Ore. 187, 120 P.2d 768 (1942) *Fossi v. George,* 191 Ore. 113, 228 P.2d 798 (1951); *Frame v. Grisewood,* 81 Nev. 114, 399 P.2d 450 (1965); *Tracy v. Brecht,* 3 Cal. App. 2d 105, 39 P.2d 498 (1934); *Knickrihm v. Hazel,* 3 Cal. App. 2d 721, 40 P.2d 305 (1935); *Noble v. Key System, Ltd.,* 10 Cal. App. 2d 132, 51 P.2d 887 (1935); *Frisvold v. Leahy,* 15 Cal. App. 2d 752, 60 P.2d 151 (1936); *Tate v. Borton,* 272 S.W.2d 333 (Ky. App. 1954); *Sahli v. Fuehrer,* 127 N.W.2d 900 (N.D. 1964). *Cf. Jensen v. Chicago, M. & St. P. Ry.,* 133 Wash. 208, 233 Pac. 635 (1925).

■ Miss Bevis admitted to the consumption of at least five stubbies or glasses of beer during the course of an evening when beer appeared to be readily available. There

was other testimony from which it could be inferred that she consumed more. Her friend, whose home she visited after departing the Key Center Tavern, testified that in his opinion she was under the influence of intoxicants. This evidence, while not overwhelming upon the issue, was sufficient to carry the question of intoxication to the jury. Cf. State v. Baker, 56 Wn.2d 846, 355 P.2d 806 (1960).

We find no reversible error in the contentions of Miss Bevis.

Defendant Pierce County on appeal makes seven assignments of error which fall into three overlapping categories: (1) A challenge to the sufficiency of the evidence to support a finding of negligence on the part of the county; (2) claims of error in the admission of evidence; and (3) claims of instructional error.

At the outset, it should be observed that we are committed to the rule that, although a county is not an insurer against accident nor a guarantor of the safety of travelers upon its roadways, it is nevertheless obligated to exercise ordinary care to keep its public ways in a safe condition for ordinary travel. Fritch v. King Cy., 4 Wn.2d 87, 102 P.2d 249 (1940); Berglund v. Spokane Cy., 4 Wn.2d 309, 103 P.2d 355 (1940), and cases cited. And, this obligation includes the responsibility to post adequate and appropriate warning signs when such are required by law, or where the situation, to the county's actual or constructive knowledge, is inherently dangerous or of such a character as to mislead a traveler exercising reasonable care. Tyler v. Pierce Cy., 188 Wash. 229, 62 P.2d 32 (1936); Johanson v. King Cy., 7 Wn.2d 111, 109 P.2d 307 (1941); Lucas v. Phillips, 34 Wn.2d 591, 209 P.2d 279 (1949); Schneider v. Yakima Cy., 65 Wn.2d 352, 397 P.2d 411 (1964).

Applying the foregoing principles to the evidence adduced at the trial, we are convinced the trial court properly submitted the issue of the county's negligence to the jury. From the evidence concerning the characteristics of the dead ending of Devil's Head road, the jury could well have concluded that the situation was dangerous and deceptive,

that Pierce County recognized the condition, and that the dead-end warning sign was negligently and ineffectively placed. We, therefore, find no merit in Pierce County's challenge to the sufficiency of the evidence, nor in its assignments of error directed to instructions defining its responsibility.

Under the second category of assignments of error, Pierce County challenges the admission of evidence concerning relevant provisions of the "Manual for Signing" of the Washington State Highway Commission. It is the principal contention of the county that the manual was not effectively adopted by the highway commission and therefore was not binding upon the county. We need not pass upon the question of whether the highway commission effectively adopted the manual, for the reason that the evidence presented without objection and the instructions given by the trial court clearly espoused the county's contention that the manual was not binding upon it. In this regard the jury was fully advised that although the county admittedly utilized and recognized the manual as a guide to eventual uniformity in traffic signing, the county did not deem it mandatory and the jury should not so apply it. Under these circumstances, we find no prejudicial or reversible error in the admission of the questioned portions of the manual nor in the trial court's instructions concerning the manual.

The remaining assignments of error fall into the third category, and revolve principally about instructions given or refused and their relation to the issue of proximate cause. In this regard, it is Pierce County's contention that its theory, that the negligence or intoxication of Miss Bevis constituted the sole and superseding proximate cause of the accident, was not adequately covered or properly submitted to the jury.

■ We have no serious quarrel with Pierce County's theory, nor with its contention that it was entitled to have its theory submitted to the jury. To accomplish this, however, it was incumbent upon Pierce County to propose and request proper instructions correctly reflecting the law.

This it did not do. Instead, the requested and rejected instruction, upon which it now predicates a claim of error, virtually directs a verdict for Pierce County in the event of a jury finding of intoxication on the part of Miss Bevis. Such an instruction does not properly reflect the doctrine of superseding cause as opposed to concurring causes. See *Eckerson v. Ford's Prairie School Dist. No. 11*, 3 Wn.2d 475, 101 P.2d 345 (1940), for a discussion of the subject of superseding cause. It is axiomatic that the trial court is not required to rewrite or give proposed instructions which are unduly slanted or which otherwise incorrectly state the law. *Yenor v. Spokane United Rys.*, 143 Wash. 541, 255 Pac. 947 (1927); *Knight v. Pang*, 32 Wn.2d 217, 201 P.2d 198 (1948).

Furthermore, Pierce County was not precluded by the instructions given from urging its theory upon the jury, for the jury was fairly advised concerning burden of proof, proximate cause, negligence, contributory negligence, the host-guest relationship, and the various forms of verdicts which it could return.

We find no reversible error arising out of Pierce County's claims of error.

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH and WEAVER, JJ., and BARNETT, J. Pro Tem., concur.