[No. 30556. Department One. December 30, 1948.]

CHARLES F. KNIGHT, *Appellant,* v. ALLEN K. PANG *et al., Respondents.*[1]

[1]Reported in 201 P. (2d) 198.

*Levinson & Friedman,* for appellant.

*Eggerman, Rosling & Williams* and *Hartge & Cadwallader,* for respondents.

BEALS, J.—The plaintiff in this action, Charles F. Knight, was struck and injured by an automobile driven by the defendant Allen K. Pang, October 18, 1946, at about a quarter past seven o'clock in the evening, at the intersection of First avenue south and Hanford street in the city of Seattle. He instituted this action against Mr. Pang, Jee Wong and Jane Doe Wong, his wife (owners of the car), and Jung Pang and Jane Doe Pang, his wife, for the recovery of damages due to the injuries which he suffered as the result of the accident.

The action was tried upon plaintiff's amended complaint (which will hereinafter be referred to as the complaint), which alleged that the accident was the result of negligent driving on the part of defendant Allen K. Pang and that, as a result of the accident, plaintiff suffered very serious injuries, and prayed for judgment against the defendants in the sum of fifty thousand dollars.

The defendants answered the complaint, admitting that, at the time of the accident, the automobile was being operated by the defendant Allen K. Pang, denying that Pang had been negligent, and also denying the other material allegations of the complaint. By way of an affirmative defense, defendants alleged contributory negligence on the part of the plaintiff.

Plaintiff replied, denying the allegations of contributory negligence, and, in due time, the action was tried to a jury, which returned a verdict in favor of the defendants.

Plaintiff moved for a new trial, basing his motion upon the statutory grounds, and, December 19, 1947, the court

denied plaintiff's motion for a new trial and entered judgment upon the verdict, dismissing plaintiff's action with prejudice.

From this judgment, plaintiff has appealed, assigning error upon the refusal of the trial court to set aside the verdict and grant a new trial, appellant contending that the verdict was against the weight of the evidence; upon two instructions read by the trial court to the jury, to which appellant excepted; upon the refusal of the trial court to give two instructions which appellant requested; and upon the court's ruling refusing to receive certain evidence offered by appellant.

From the statement of facts, it appears that plaintiff, a pedestrian, on the date above mentioned, being on his way to his home, was standing on the sidewalk at the northwest corner of First avenue south and Hanford street (a right-angle intersection), desiring to cross First avenue to the east side thereof to board a city bus. It was quite dark, and the pavement was dry. First avenue south, running approximately north and south, is paved, the pavement being approximately sixty-eight feet in width, and is well lighted. Motor traffic moves in three lanes on each side of the center line, which is approximately thirty-four feet from either curb. At the center of the intersection was an overhanging traffic signal, operating a blinker light that flashed an amber-colored caution signal for north and south traffic and a red light for east and west traffic. There was considerable northbound traffic. The extent of the southbound traffic is uncertain.

Appellant paused a moment on the corner, looked to his right, and observed the bus, which he desired to board, at a point about two blocks south on First avenue. He then looked to his left and saw an automobile approaching from the north, distant about a block from where appellant was standing. This was the car driven by respondent. He then proceeded to cross First avenue toward the bus stop at the northeast corner. No crosswalk was indicated upon the pavement, but appellant's testimony that he proceeded

within the area which would have been marked off for a crosswalk, had one been indicated, is not disputed.

Appellant was struck by the left front fender of the car, which was proceeding in a southerly direction on the west side of First avenue, driven by Allen K. Pang (who will hereinafter be referred to as respondent), either just as appellant approached the center line of the street, or immediately after he had reached the center line and had stepped back a few feet in order to be away from traffic from the south, the evidence being in conflict on this point. Appellant was thrown seven or eight feet in the air and a distance of from fifteen to twenty feet toward the south, suffering severe injuries, for which he seeks recovery in this action.

Respondent was driving a 1942 Pontiac sedan and was proceeding at a rate of twenty-five to thirty miles per hour. He was not wearing glasses, although his driver's license directed that he wear glasses when driving.

In his complaint, appellant alleged that, at the time of the accident, there was in effect ordinance No. 73375 of the city of Seattle, passed by the city council June 26, 1944, and approved by the mayor the following day, the ordinance being entitled:

" 'An Ordinance relating to and regulating traffic, travel, and transportation and their incidents upon the streets and other ways open to the public; prescribing the powers and duties of officers and others in relation thereto; defining offenses; providing penalties, and repealing Ordinance No. 68700 and all amendments thereof, and all other ordinances insofar as they are in conflict therewith.' "

In the following paragraph of the complaint, appellant alleged that, at the time of the accident, respondent was driving the automobile carelessly and negligently, in a southerly direction on First avenue at its intersection with Hanford street,

" . . . in that he drove said car with defective vision and while not wearing glasses as required by his operator's license, in that he failed to keep the car under control, failed to have the automobile equipped with proper brakes, or

failed to apply the same, failed to keep a proper lookout, failed to sound the horn of the automobile, or give any warning, drove said automobile at an excessive speed and failed to yield the right of way to the plaintiff, and came into violent collision with the plaintiff, who was then crossing said First Avenue in the marked pedestrian crossing in an easterly direction on the northerly side of Hanford Street, throwing the plaintiff a distance of more than twenty-five feet."

Appellant argues that the trial court erred in refusing to set aside the verdict of the jury and grant a new trial, appellant contending that the verdict was against the weight of the evidence.

█ It is a well-recognized principle of law that, when the sufficiency of the evidence to support a jury's verdict is questioned on appeal, the evidence will be interpreted in support of the verdict rendered.

In the case of *Scholz v. Leuer,* 7 Wn. (2d) 76, 109 P. (2d) 294, we said:

"Where, as in the case at bar, the sufficiency of the evidence is questioned, the evidence should be interpreted most strongly against the defendant and in the light most favorable to the plaintiff. The verdict of the jury should be permitted to stand if, so interpreted, there is any substantial evidence, or reasonable inference from the evidence, to sustain it. This principle is so well established in this jurisdiction as to scarcely require citation of supporting authority. [Citing cases.]"

Respondent was called as an adverse witness and testified that, subsequent to the accident in which appellant was injured, he had pleaded guilty to a charge of negligent driving based upon the accident suffered by appellant. On cross-examination by his own counsel, respondent testified that he pleaded guilty because, at the time of the accident, he was not wearing his glasses, as directed by his driver's license, and felt that, for that reason, he was guilty of the charge.

After appellant rested his case, respondent was called to the stand and testified that he was driving in a southerly direction along First avenue, at the rate of approximately

twenty-five miles an hour as he approached the intersection with Hanford street; that he first saw appellant from the distance of about a block; that appellant was walking toward the center line of First avenue and was plainly visible because of the lights of a car approaching from the opposite direction; that he kept appellant under continuous observation and saw him reach the center line of the street and stand there as respondent approached; that, when respondent's car was about fifteen feet from appellant, who was looking toward the south, the latter suddenly stepped backwards into the path of respondent's car, which, at the time, was proceeding about four or five feet west of the center line of the street; that respondent immediately applied the brakes and turned to his right, but was unable to avoid striking appellant, who was hit by the left front fender of the car.

Respondent admitted that he was not wearing his glasses, although his driver's license required that he wear them, but testified that he had no difficulty in seeing an object a block away without his glasses, and that he did see appellant crossing the street.

Respondent testified that he saw the traffic signal and slowed down as he approached the intersection, and that he was traveling at less than twenty-five miles per hour when his car struck appellant. He also testified that he thought that there were cars moving south on his right, but he did not "remember whether there were or not."

Wilfred Wallenberg, called as a witness by respondent, testified that he was driving north on the east side of First avenue at the time of the accident; that he observed appellant until his car reached the point opposite where appellant was standing; that he heard the impact when appellant was struck by respondent's car and saw the collision through his rear-vision mirror. The witness testified that appellant was standing on the center line, facing east, and that appellant stepped back (west of the center line) as the witness's car passed in front of him. The witness testified that the northbound traffic was heavy, and that there was considerable

traffic moving to the south on the west side of the avenue. On cross-examination, the witness testified that he was driving three or four feet east of the center line, at the rate of twenty-five to thirty miles per hour.

Mrs. Wallenberg, who was riding with her husband, testified that, just before the accident, she saw appellant standing on the center line; that she turned, upon hearing the sound of the collision, and saw him fall. She did not see appellant step back.

Walter R. Schott, who was also driving north on First avenue, testified that he was in a position to observe appellant; that he saw appellant standing on the center line of the street, just before the collision; that he did not see appellant step back, but that he saw him at the instant of the impact, standing two to three feet west of his former position on the center line.

Mrs. Schott, also called on behalf of respondent, testified that she was riding with her husband; that she saw appellant standing on the center line, but that she did not see the collision. The witness testified that all three lanes on the west half of First avenue south were occupied by cars moving south.

A physician and occulist, selected by the court pursuant to an agreement by counsel for both parties, when called by appellant, testified that he had tested respondent's vision and that respondent was nearsighted and, in the opinion of the witness, should use glasses for both reading and driving. On cross-examination, the doctor testified that respondent could have, without glasses, seen the outline of a pedestrian, silhouetted against lights, at the distance of a block.

A police officer, called by appellant, testified that he arrived at the scene of the accident a few minutes after it occurred; that he questioned respondent, who stated that he was driving at the rate of thirty miles an hour, and that he did not see appellant until he was "just about to him." The officer testified that there was no evidence of skid marks on the pavement. On cross-examination, the witness testified that respondent told him that, just prior to reach-

ing the intersection, respondent saw appellant, who suddenly stepped back into the path of his car. Respondent denied that he had told the officer that he was driving at the rate of thirty miles an hour.

At the close of appellant's case, respondent moved for a nonsuit, which the court denied. Respondent moved to dismiss at the close of all the evidence, and the court denied that motion.

█ The judge who presided at the trial saw the witnesses and heard them testify and, of course, was in a better position than are we to estimate and evaluate the testimony. Examination of the evidence, which we have above summarized, convinces us that the jury's verdict in favor of respondent is supported by a due proportion of the evidence, and that appellant's first assignment of error is without merit.

Appellant assigns error upon two instructions which the court read to the jury. It should be noted that the trial court gave the usual instruction that the jury should consider the instructions as a whole and not place undue emphasis on any particular instruction.

█ Appellant first assigns error upon the court's instruction No. 11, which reads as follows:

"You are instructed that a person may not say that he looked and did not see that which he must have seen had he looked. The situation is the same as though he had looked and seen the object. I charge you, therefore, that if the plaintiff Knight saw the approaching automobile of the defendant Pang, or in the exercise of reasonable care should have seen it, had he looked as he crossed the street, in time to have avoided the accident by the exercise of ordinary care, then the plaintiff is guilty of contributory negligence and can not recover from the defendants even though you further find that the defendant Pang was also guilty of negligence."

Appellant preserved the following exception to this instruction:

"The plaintiff excepts to the giving of instruction No. 11 in the form given by the court on the ground that such instruction is not applicable to the case at bar because it

relates to the situation of a person having seen an automobile, or having looked and not seen an automobile. 'You are instructed that a person may not say—' THE COURT: You don't need to read the instructions. This one has been identified as being instruction No. 11. MR. LEVINSON: All right. —for the reason that in this case the plaintiff stated that he saw the automobile of the defendant. There is no set of facts to which this could apply. Had he denied seeing the automobile, then the situation would have been different."

Appellant, as above stated, testified that he saw respondent's car when it was about a block north of the crossing. His counsel argue that this instruction might have been considered by the jury as placing before them for determination the question of whether or not appellant had ever seen respondent's car, and as permitting the jury to find that appellant was guilty of contributory negligence if, at any time during his progress across the west side of the street, appellant saw respondent's car in time to have avoided the accident.

From the evidence, and from other instructions given by the court, including an instruction which told the jury that a pedestrian enjoys the right of way while proceeding across a street at a recognized crossing, the jury should have understood that appellant could continue walking, or standing still, until, in the exercise of· due caution, it became apparent to him, or would have been apparent to a reasonable person, that his position had become dangerous.

Evidence introduced by respondent was to the effect that appellant was standing still at, or a little west of, the center line of the street, and that he then stepped back, just before he was struck by the automobile. It should be assumed that the jury properly applied the instruction to any appropriate situation disclosed by the evidence. There was testimony to the effect that appellant, without looking toward his left, stepped back into the path of respondent's car.

The instruction is free from error.

■ Appellant also assigns error upon the court's instruction No. 15, which reads:

"You are instructed that while the law gives a pedestrian the right of way at crosswalks, it does not give a pedestrian the exclusive right of way, and every pedestrian must use reasonable care and caution in exercising that right of way to protect himself from danger. If, therefore, you find from a fair preponderance of the evidence that the plaintiff did not use ordinary care for his own safety in crossing the street, and that such failure proximately contributed to the accident, then your verdict must be for the defendants."

To this instruction, appellant excepted as follows:

"I except to the giving of Instruction No. 15, which places a limitation in respect of the right of way, when it states, 'It does not give a pedestrian the exclusive right of way.' It is a right of way qualified in the definition of the statute and an attempt to say it is not an exclusive right of way, and dismisses the rights which he has. He still has a right of way, and it is not applicable to the law in this case."

Appellant argues that the instruction is contradictory and does not correctly state the law. The instruction is not subject to the criticisms urged against it. *Jurisch v. Puget Transp. Co.*, 144 Wash. 409, 258 Pac. 39; *Estill v. Berry*, 193 Wash. 10, 74 P. (2d) 482; *Miller v. Edwards*, 25 Wn. (2d) 635, 171 P. (2d) 821.

Appellant assigns error upon the refusal of the trial court to give his requested instruction No. 6, which reads as follows:

"You are instructed that on the date of the accident in question there was in full force and effect Ordinance No. 73375, Section 47, reading in part as follows:

" 'Driver shall proceed upon the right half of the street and as closely as practicable to the right-hand edge or curb of the roadway except upon one-way streets and when overtaking and passing another vehicle in accordance with the limitations applicable to overtaking and passing.'

"A violation of a City Ordinance by the driver of the vehicle involved in this case would be negligence as a matter of law, and if such negligence was the proximate cause of the injury or damage, if any, sustained by the plaintiff, then your verdict shall be for the plaintiff."

■■ Reference to the complaint, upon which the action was tried, discloses, as above set forth, that appellant

pleaded, in paragraph No. 3, by number, title, and date of enactment, ordinance No. 73375 of the city of Seattle, generally referred to as the "traffic ordinance." The complaint then sets forth certain alleged specific acts of negligence on the part of respondent, *supra*.

Appellant contends that paragraph No. 3 of his complaint amounts to a general allegation of negligence on the part of respondent and puts in issue any violation of the ordinance which was disclosed by the evidence, and that the jury might have found that respondent violated § 47 of the ordinance, which provides, as stated in appellant's proposed instruction, that a driver shall proceed upon the right half of the street and as closely as practicable to the right-hand edge or curb of the roadway.

The allegations of appellant's complaint do not amount to a "general allegation of negligence," as argued by appellant. Appellant's complaint does not, as appellant argues, put in issue any and every violation of the ordinance which might be disclosed by the evidence upon the trial. The ordinance referred to was properly pleaded by number, date, and title, and the trial court was thereby required to take judicial notice of the ordinance. *Price v. Gabel*, 162 Wash. 275, 298 Pac. 444.

The situation presented to the trial court, however, did not have the effect of bringing before the trial court the nearly two hundred provisions of the ordinance, in such a manner as to charge respondent, in the case at bar, with responsibility for defending against any possible violations of the ordinance which might be suggested by the evidence introduced on behalf of appellant.

In 20 Am. Jur. 48, Evidence, § 17, appears the following text:

"Judicial knowledge cannot be resorted to so as to raise controversies not presented by the record. The right of a court to act upon that which is in point of fact known to it must be subordinate to those requirements of form and orderly communication which regulate the mode of bringing controversies into court and of stating and conducting them."

Appellant relies upon the case of *Price v. Gabel, supra,* in which a general demurrer to the complaint was sustained, the complaint alleging that the defendant had injured the plaintiff, while backing his automobile in violation of an ordinance which was pleaded by number and title. Apparently, the demurrer was sustained because, under another provision of the ordinance, not specially pleaded, it appeared from the complaint that the plaintiff had been guilty of contributory negligence at the time and place of the accident, for the reason that he was then and there engaged in certain prohibited activities in the street.

Evidently, the trial court, in the case cited, took judicial notice of the provision of the ordinance which was not pleaded, and held that, under the facts which were pleaded, the plaintiff was guilty of such negligence as barred his recovery. On plaintiff's appeal, the judgment of dismissal was affirmed by this court.

The argument before the trial court arose on the defendant's general demurrer to the complaint. The plaintiff had properly pleaded the ordinance, thereby invoking the judicial knowledge of the court, and, by his complaint, had called to the attention of the court provisions of the ordinance which he himself had violated; his acts, as he himself had set them forth in his complaint, taken in connection with the ordinance, demonstrating that he had been guilty of contributory negligence as a matter of law.

The case does not support appellant's contention.

By pleading, in paragraph No. 4 of the complaint, certain specific acts of negligence on the part of respondent, the complaint put in issue any violation, on respondent's part, of the provisions of the ordinance which applied to the particular acts of negligence alleged. None of these acts amounted to a violation of § 47 of the ordinance, set forth in appellant's proposed instruction No. 6.

The rule that pleadings shall be liberally construed does not avail appellant. The pleading of the ordinance by appellant is limited in its scope to the acts of negligence pleaded, and does not amount to a general allegation of negligence.

█ Appellant also argues that the complaint should have been deemed to have been amended to conform to the proof, because respondent failed to object to certain evidence, which appellant now contends shows a violation by respondent of § 47 of the ordinance. Upon the record, this contention is not well founded.

In the course of his testimony concerning the accident, appellant, referring to respondent's car, testified:

"The car was coming along, I couldn't tell how fast, but he was coming along there, but over,—Oh, farther over than he would have been, ordinarily, towards the yellow line."

This testimony was introduced in connection with appellant's description of the situation just prior to the accident. It requires too great a stretch of the imagination to regard appellant's testimony as presenting any issue concerning violation of § 47 of the traffic ordinance.

On behalf of respondent, there was testimony which tended to prove that there was considerable traffic moving south on the west side of the street.

The pleading of the ordinance by appellant does not amount to an allegation that each of its provisions was violated, or to a general allegation of negligence. The testimony did not clearly raise any issue under the section referred to, and was insufficient to bring before the jury a violation, by respondent, of § 47 of the ordinance.

The trial court did not err in refusing to read to the jury appellant's requested instruction No. 6.

█ Appellant assigns error upon the refusal of the trial court to read to the jury his requested instruction No. 9, as follows:

"If the plaintiff was in the cross-walk, then he had a right to assume until he knew, or by the exercise of reasonable care should have known, *that the driver of the vehicle would recognize his right-of-way,* and in determining whether or not the plaintiff was guilty of contributory negligence, you shall take into consideration the right of the plaintiff to rely upon his right-of-way as I have hereinabove set forth." (Italics ours.)

The requested instruction would not have placed before the jury a correct rule of law. A pedestrian, properly availing himself of his privilege to cross a street upon which motor vehicle traffic is moving, may assume that the driver of a vehicle will recognize the pedestrian's right of way only until he becomes aware, or, in the exercise of reasonable care, should become aware that the driver of the vehicle will not, or probably will not, do so.

The instruction, as requested, was clearly improper, and the trial court correctly refused to give it. By an appropriate instruction, the trial court properly instructed the jury upon the same principle that appellant's counsel probably endeavored to include by requested instruction No. 9.

 Unless a requested instruction may be given without modification, error may not be assigned upon the refusal of the court to give it. *Howe v. West Seattle Land &, Imp. Co.*, 21 Wash. 594, 59 Pac. 495; *Ramm v. Hewitt-Lea Lbr. Co.*, 49 Wash. 263, 94 Pac. 1081; *Nollmeyer v. Tacoma R. & Power Co.*, 95 Wash. 595, 164 Pac. 229; *State v. Woods*, 163 Wash. 224, 1 P. (2d) 219; *State v. Refsnes,* 14 Wn. (2d) 569, 128 P. (2d) 773; *State v. Wilson*, 26 Wn. (2d) 468, 174 P. (2d) 553.

Finally, appellant assigns error upon the refusal of the trial court to admit in evidence a certified copy of the record of respondent's conviction before the superior court, on appeal from his conviction of the crime of reckless driving before the Seattle municipal court, the charge having arisen out of the accident which is the basis of this action. Respondent, when appearing before the superior court on that appeal, changed his plea of not guilty and entered a plea of guilty.

When the trial court, in the case at bar, sustained respondent's objection to the introduction of a certified copy of the plea, counsel for appellant moved to amend an appropriate paragraph of the complaint by adding the words "and the violation of the provisions of the ordinance heretofore pleaded."

The court sustained respondent's objection to the amendment, stating that it would plead so many different acts of negligence, not before covered, that it "would require almost a revamping of the entire pleadings" in the case.

The denial of leave to amend, at the time the request was made, was a matter well within the discretion of the trial court, and no error is assigned by appellant upon this ruling. A trial court has a wide discretion in passing upon a trial motion to amend and may deny the same, if it appears that to allow the amendment would work an injustice on the opposing party.

The record offered simply shows that respondent pleaded guilty to "violation of Ordinance No. 73375, Section 46 (Negligent Driving)." Had appellant's complaint contained a general allegation of negligence on the part of respondent, the record offered in evidence might have been admissible as supporting the general allegation. As above stated, the complaint contained no such charge. Upon the record made before the superior court, there is nothing to show that the charge of negligence to which respondent entered a plea of guilty, was anywise connected with any of the particular acts of negligence stated in appellant's complaint. Section 46 of the ordinance declares it to be an offense to drive a motor vehicle "in such a manner as to endanger, or be likely to endanger, any person or property," which includes practically any act by the driver of a motor vehicle that might be declared to be negligent.

As above stated, respondent was called by appellant as an adverse witness, and testified that, subsequent to the accident, he had pleaded guilty to a charge of negligent driving, in connection with appellant's injury. The only evidence which appellant offered in connection with this matter was a certified copy of the record of that plea. There was before the jury evidence concerning this matter, and it is difficult to believe that the admission in evidence of the certified copy of the plea would have added anything to the jury's information.

Appellant's assignment of error is without merit.

The record before us is free from error, and the judgment appealed from is affirmed.

MALLERY, C. J., STEINERT, SCHWELLENBACH, and HILL, JJ., concur.

[1]Reported in 201 P. (2d) 184.